Food Fair Stores, Inc., Appellant, *v.* Kline.

Argued May 26, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

reargument refused September 9, 1959.

*Arthur Berman,* with him *Samuel Handler,* and *Compton, Handler, Berman & Boswell,* for appellant.

*Bernard G. Segal,* with him *Josephine H. Klein, Arthur J. Sullivan,* and *Schnader, Harrison, Segal &*

*Lewis,* and *Hurwitz, Klein, Meyers & Benjamin,* and *Earnest and Torchia,* and *McNees, Wallace & Nurick,* for appellees.

OPINION BY MR. JUSTICE BOK, July 2, 1959:

This action began with a complaint in equity and ended when preliminary objections were sustained. In such event the case must be clear and free from doubt: *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491 (1955). And we think it is.

Defendant Kline owned sixteen acres of land of rectangular shape, about four times as long as broad, and running in its longer dimension from west to east. Its one contiguous access street, Twenty-fifth Street in Harrisburg, runs along its western edge.

Defendant Kline conveyed to the Kline Foundation the western half of his sixteen acres on which he had built a long rectangular building surrounded by a parking area. The eastern end of this building was leased to plaintiff. The parking area and a place for another building extended east, from the eastern edge of the land conveyed to the Foundation, so that the total land developed equalled about two-thirds of the sixteen acres. The rest of it, still to the east, remained undeveloped until defendant Kline leased part of it to defendant, Penn Fruit Company and the placement and perquisites of the latter's building are the basis of this case.

The developed area, two-thirds of the whole, is called Schedule B, of which the part not deeded to the Foundation is called the Annex, and the whole tract of sixteen acres is called Schedule A.

The Penn Fruit building, with a concrete apron on its western side, was so canted that the southwest corner and most of the apron are west of what the maps in evidence show as the eastern boundary of Schedule B. Hence it extends into the Annex. The distance be-

tween the nearest points of the plaintiff's and Penn Fruit's buildings is over two hundred feet. The figures of the encroachment are that its total, including apron and building, is 3968 square feet, of which 115 square feet form the building encroachment.

There are two basic questions: the encroachment, and the use of the parking and access facilities.

As for the encroachment, this is not a case of one man's building trespassing on another man's real estate. Food Fair and Penn Fruit are both lessees from defendant, not adjoining landowners. Separated by more than two hundred feet, the only conflict between them is the idea of competition, and in that sense the encroachment is *de minimis*, even though it is a technical violation of paragraph 24 of the lease. Plaintiff admits in its brief that all 550 spaces for car parking, called for in the lease, have been provided; the encroachment has therefore not affected the parking facilities. In addition, plaintiff must have watched its competitor's building go up without raising the question and now it asks drastic injunctive relief. How Penn Fruit and Kline could remedy the situation without slicing off the offending corner of the building or incorporating it into a rampart running along the boundary of Schedule B is hard to see, and neither of those solutions is either fair or sensible. A chancellor is not bound to make a decree that will do more harm and work greater injury than the loss he is asked to redress: *Moyerman v. Glanzberg*, 391 Pa. 387, 138 A. 2d 681 (1958); *Ventresca v. Ventresca*, 182 Pa. Superior Ct. 248, 126 A. 2d 515[2] (1956). Nor will he act unless there is a real and special injury, of which there is none here: *Haig Corporation v. Gassner*, 163 Pa. Superior Ct. 611, 63 A. 2d 433 (1949).

On the point of common parking facilities, plaintiff has made a great deal of tortured argument about de-

fendant Kline's intention to keep the Annex and Schedules separate and exclusive. A glance at the lease and at the property should answer the question.

Paragraph 21 of the lease to Food Fair provides that it shall have "the non-exclusive and non-revocable right, together with other tenants and occupants of Kline Shopping Center, to the use of all parking space and driveways . . . for the purposes of ingress, egress, parking of motor vehicles for itself and its customers", etc., and referring to Schedule B.

There follows a rider to the above paragraph: "Provided however, landlord reserves the exclusive right to determine the specific parking areas and driveways within the entire parking area . . . on Schedule B or within the entire premises owned or controlled by landlord as outlined on . . . Schedule A; and further reserves the right to determine the pattern or method of parking motor vehicles thereon."

A fair reading of the lease, in our view, equates Kline Village with Schedule A and Kline Village Shopping Center (or Kline Shopping Center) with Schedule B, and demonstrates that defendant Kline undertakes only to prevent another supermarket's being erected in Schedule B. Plaintiff admits his right to put one or ten supermarkets on the land east of Schedule B, but argues that the two tracts are mutually exclusive and that there should be no transport of any kind across the boundary: it even urges that a barricade be erected on it. While the lease, in paragraph 24, expressly forbids the erection of a supermarket in Schedule B, it does not forbid any tenant to the east of Schedule B from driving to or from Twenty-fifth Street across Schedule B or from parking wherever facilities exist: in fact, such use of the whole tract is clearly indicated. It is obvious that defendant Kline meant to develop his land as a unit and not to chop it into two self-sustain-

ing parcels, with the need to blaze a path to some new access road somewhere to the eastward. Restrictions are not favored by the law and will be construed strictly against him who asserts them: *Jones v. Park Lane For Convalescents*, 384 Pa. 268, 120 A. 2d 535 (1956).

All that is needed for a common-sense solution of this case under the law is to stand on the property with a copy of the lease in one hand.

The decree is affirmed, costs to be paid by the appellant.