568 A.2d 672

**Robert GEY, Annette Gey, Donald Bindas, Judith Bindas, Thomas W. Jurecko, Janet B. Jurecko, Geoffrey Frey and Charlene Frey**

v.

**Dennis BECK and Patricia Beck.**

**Appeal of Donald BINDAS, Judith Bindas, Thomas J. Jurecko, Janet B. Jurecko, Geoffrey Frey and Charlene Frey.**

Superior Court of Pennsylvania.

Argued April 13, 1989.

Filed Jan. 8, 1990.

---

318

S. Michael Streib, Pittsburgh, for appellants.

Marvin A. Fein, Pittsburgh, for appellees.

Before ROWLEY, BECK and MONTGOMERY, JJ.

BECK, Judge:

The question presented is whether a restrictive covenant that specifies that all lots in a residential development be known and designated as single family residential lots should be specifically enforced by requiring the developers to remove a road they constructed over one of the lots.

Appellants are homeowners who purchased lots in a plan known as the West Gate development. Appellee grantors and developers of the residential plan recorded the plan in 1983 and revised it in 1985. The revision increased the number of lots from 10 to 28. The plan calls for a cul-de-sac community with one road, bordered by residential lots with no intersecting roads. Appellees gave appellants a document containing "protective covenants," which provided:

(A) These restrictions and covenants shall run as covenants with the land and shall be binding upon the undersigned [defendants Dennis and Patricia Beck], and all persons claiming under or through them....

(B) That Lot Nos. 1 through 29 [designated as Lots 201 through 228 on the recorded West Gate I Revised Plan], both inclusive, in said Plan shall be known and designated as single family residential lots.

Appellants also observed a large sign at the entrance to the plan stating that the lots came with "protective covenants" and showing a drawing of the plan which corresponded to the recorded plan, except for the numbering system used to identify the lots. One of the appellant purchasers was orally advised that the single road servicing the development would not be connected with or to any other streets or developments.

In 1986, appellees applied for approval of a new subdivision plan calling for a new street, "Cindi Drive." The street was to be constructed on one of the lots of the West Gate Plan to connect it with other roads. Appellants objected to this plan at a borough meeting to no avail. The plan

was approved by the borough and appellees began construction of Cindi Drive.

Subsequently, appellants initiated an equity action seeking preliminary and permanent relief in the form of an injunction prohibiting appellees from using the residential lot to construct a road and directing appellees to record their covenants so as to give notice to all future grantees.

Appellants argued that the covenants restricted the lots to residential use, thus implying that no lot could be used to build a road and the street would remain a cul-de-sac. The Chancellor issued an adjudication in which he found appellants' right to relief to be clear, noting that (1) the covenants prepared by appellees were binding upon them whether or not they were recorded or noted in the deeds and (2) the language of the covenants forbids the building of a public road on property designated as single family residential lots. A preliminary injunction was ordered granting the relief requested by appellants, contingent upon appellants posting a $100,000 bond for damages that might be suffered by appellees until trial and final adjudication. Appellants did not have the resources to post the bond and therefore the preliminary injunction never became final. The road was built and the matter came before the court for final adjudication.

In its adjudication dated May 19, 1988, the trial court adopted the following statement of facts as set forth in appellants' brief:

The matter came before the Honorable Martin I. (sic) Wekselman on plaintiffs' request for preliminary relief. After viewing the written documents and hearing testimony, on April 10, 1987, Judge Wekselman rendered an Adjudication in which he found plaintiffs' right to relief to be clear. Of import to the instant proceedings is the fact that Judge Wekselman ruled in the course of the Adjudication that the Covenants prepared by defendants are binding upon defendants whether or not they are recorded or noted in defendants' deeds, and that the language of those covenants forbids the building of a

public road upon property designed as "single family residential lots." Subsequent to Judge Wekselman's Adjudication, a Preliminary Injunction was issued granting the relief requested by plaintiffs, but contingent upon them posting a bond in the amount of $100,000 for damages that may be suffered by defendants until trial and final adjudication. As plaintiffs did not have the resources to post this bond without jeopardizing their savings and the homes they sought to protect, the preliminary injunction did not become final, the offending road was built, and the matter is now before the Court for final adjudication.

Against this factual backdrop, the court went on to consider whether enforcement of the covenant should be granted. The chancellor noted:

despite the fact that there is no specific mention in the restrictive covenants or in the deeds or anywhere else that the West Gate Plan would always be a development of homes along a one-street cul-de-sac, such specific reference is not required for enforcement. Everyone knew that the lots in the West Gate Plan were reserved for single-family residences only. Defendants had committed themselves to that and the construction of a road on one of the lots is an obvious violation of that negative easement.

Despite this finding, the court went on to conclude:

The Chancellor is, nevertheless, not disposed to grant the relief requested. The restrictive covenants in this case were designed primarily to maintain the overall tone of the community with respect to the types of dwellings to be erected and their value. Although plaintiffs might have been interested in maintaining a cul-de-sac, that does not appear to have been the overall or even principal purpose of the restrictive covenants, although they can be read to require that that condition remain in effect.

The court found that the properties had increased in value, and that appellants had not shown that the presence of Cindi Drive caused an increase in traffic or materially

affected the character of the property or appellants' enjoyment of their property. The court entered an adjudication and decree nisi directing that the restrictive covenant be recorded but denying appellants' other request. In denying appellants' motion for post-trial relief, the chancellor concluded "although the covenants appear to have been breached, the specific enforcement sought by appellants would confer no significant benefit and would not be appropriate." This appeal followed.

Appellants contend that the Chancellor erred in denying injunctive relief where: (1) he found that the covenants did prohibit the building of Cindi Drive, that appellants had relied on the covenants in purchasing their homes and that the covenants had been intentionally and willfully breached; (2) developers/appellees conveyed the property rights to appellants only a short time before the violation; and (3) the facts demonstrated that equitable relief was proper even though appellants could not show financial harm. Appellants also assert error inasmuch as the Chancellor prevented them from showing the injuries they will suffer as a result of the appellees' violations, holding that this would call for speculation. Appellants maintain that the loss of the cul-de-sac feature of the property resulting from construction of the road has caused and will continue to cause hardship to them in the form of the loss of the benefits originally promised under the restrictive covenant.

Initially, we note that the scope of appellate review from a final decree in equity requires us to determine whether or not the chancellor made an error of law or committed an abuse of discretion. *Alderfer v. Pendergraft,* 302 Pa.Super. 210, 214, 448 A.2d 601, 603 (1982). More specifically, we note that although the chancellor's findings of fact have the force of a jury verdict and usually will not be disturbed on appeal, "conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable." *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.,* 282 Pa.Super.

526, 534, 423 A.2d 370, 374 (1980); *see also Peters v. Davis,* 426 Pa. 231, 236, 231 A.2d 748 (1967).

We begin with an analysis of the meaning of the covenant in question. We must construe the meaning of the covenant to determine whether it was breached by appellees' construction of Cindi Drive, for if it was not, there is obviously no reason for an order enforcing it.

▓▓ Appellees argue that the trial court was correct in denying the injunction because the covenant in question does not specifically provide for the preservation of a cul-de-sac. In support of this proposition, appellees cite to a number of cases stating the general principle that a restrictive covenant must be specific if it is to be enforced. Appellees note that the trial court determined that the instant restrictive covenant "might be read to require the maintenance of the cul-de-sac, but that did not appear to be their overall or principal purpose" and urge us to conclude, therefore, that use of the lot to construct a road to another development of single family residential dwellings is a residential use consistent with the restrictions imposed by the covenants.

As we have noted, the instant covenant provided as follows:

> (B) That lots Nos. 1 through 29, [designated as Lots 201 through 228 on the recorded West Gate I revised plan] both inclusive, in said Plan shall be known and designated as single family residential lots.

▓▓ Although restrictive covenants are not favored, they are legally enforceable. *Morean v. Duca,* 287 Pa.Super. 472, 430 A.2d 988 (1981). Such covenants are strictly construed against the party seeking enforcement of the covenant. *Id.* In construing a restrictive covenant, we must ascertain the intentions of the parties by examining the language of the covenant in light of the subject matter thereof, the apparent purpose of the parties and the conditions surrounding execution of the covenant. *Dreher*

*Township Board v. Solitron Development Co.,* 333 Pa.Super. 33, 40, 481 A.2d 1207, 1211 (1984).

We, therefore, look first to the express words of the instant covenant, particularly the words "known" and "designated" in section (B) of the covenant stated above, to discern their meaning. Blacks Law Dictionary (5th ed. 1979) defines "known" as "familiar; perceived; recognized; understood; especially, when used absolutely, familiar to all; generally understood or perceived." "Designate" is defined as "To indicate, select, appoint, nominate, or set apart for a purpose or duty, as to designate an officer for a command. To mark out and make known, to point out; to name; indicate." As the words in the covenant are defined, then, we read them to mean that the lots in West Gate "are recognized and understood to be set apart as single family residential lots." Provision A of the restrictive covenant provides that the covenants are to run with the land and bind all successors in interest. Our interpretation of these provisions leads us to agree with the chancellor's initial conclusion that the appellees clearly breached the covenant when they built a road over a lot which was set aside for single family residential use. As the chancellor stated in his Adjudication:

> ... despite the fact that there is no specific mention in the restrictive covenants or in the deeds or anywhere else that the West Gate Plan would always be a development of homes along a one-street cul-de-sac, such specific reference is not required for enforcement. Everyone knew that the lots in the West Gate Plan were reserved for single-family residences only. Defendants had committed themselves to that and the construction of a road on one of the lots is an obvious violation of that negative easement.... The Chancellor accepts [appellants'] contention that the existence of the cul-de-sac was a material inducement to them in purchasing their homes in West Gate....

Having concluded that the restrictive covenant in this case was meant to limit the West Gate lots to single family residential use, which would not include the construction of

a road over one of the lots, we next consider appellant's allegations of error as to the trial court's denial of injunctive relief.[1]

The chancellor denied appellants' request for an order requiring removal of the road on the ground that appellants had failed to prove any decrease in value of their properties or any increase in traffic as a result of the road being built. In fact, the chancellor found that appellants' property had increased in value and that the existence of the road benefitted appellants by providing better access to their homes for emergency vehicles. Based on these findings, the trial court concluded that to order the enforcement of the covenant through removal of the road would not confer any significant benefit on appellants and, therefore, was not appropriate. We must determine whether this conclusion was an abuse of discretion.

Cases addressing the standard for granting injunctive relief to enforce a covenant restricting the use of land are myriad and, if correctly construed, consistent. In some such cases the chancellor is faced with a difficult problem because he or she must balance the rights of the beneficiary of the covenant, who has a legal right and a justifiable expectation that the covenant will be enforced, against the interests of others and the public in general in the free and unrestricted use of land. Thus, it has often been said that restrictive covenants are to be strictly construed and are not favored in the law:

1.  Appellees' brief also includes a two paragraph argument purportedly aimed at convincing us that the covenants in question are not enforceable because they violate the Statute of Frauds. On closer inspection, however, this argument reveals itself as simply another statement of appellees' position that the covenants do not prohibit the building of Cindi Drive. In other words, appellees appear to argue that because the covenants are not clear on this point, they are an insufficient written memorialization of any understanding between the parties as to the construction of a road over any of the lots and are, therefore, barred by the Statute of Frauds. Appellees provide no precedent in support of this argument and we are aware of none. In any event, we have found, as did the chancellor, that the covenants *are* a clear statement of the parties' understanding and we find them a sufficient written memorialization of an agreement that no lot in West Gate would be used to build a road.

... public policy dictates that land shall not be unnecessarily burdened with permanent or long-continued restrictions and.... equity will not retard improvements simply in order to sustain the literal or technical observance of a covenant which for one reason or another has become useless from the standpoint of any practical utility....

*Price v. Anderson,* 358 Pa. 209, 218, 56 A.2d 215 (1948) (citations omitted). *See also Central Delaware County Authority v. Greyhound,* 386 Pa.Super. 423, 563 A.2d 139 (1989); *Covey v. Gross,* 377 Pa.Super. 580, 547 A.2d 1214, 1215 (1988).

In this case, however, we need not look with any particular disfavor on the restrictive covenant that appellants seek to enforce. The concerns with enforcement of such covenants noted above have no applicability here. We have already indicated that we agree with the chancellor's conclusion that this covenant, whether broadly or strictly construed, clearly prohibits use of any of the West Gate lots for building a road. Moreover, this is not a case where a burdensome covenant has, through the passage of time or a change of conditions in the neighborhood, lost any utility it once had. Here we deal with a restrictive covenant of very recent vintage and limited scope. Indeed, enforcement of the covenant will not result in any loss of use of the land, for the lot in question clearly can be used to build a dwelling. The only loss is to appellees' *commercial* interest in using the lot as a road to service another of appellees' housing developments.

Of greatest legal significance, however, is the fact that we are not dealing with a violation of a covenant that was either de minimus or unintentional. The violation was deliberate and flagrant. In fact, appellees violated the covenant *after* the chancellor had already determined that the building of the road would violate the covenant.

Given these crucial facts, we must ascertain what standards the law required the chancellor to apply in determining whether equitable enforcement of the restriction was

warranted. First we must emphasize that the law draws a clear distinction between cases involving intentional violations of restrictive covenants and those involving mistaken or inadvertent violations. This principle has been enunciated in several Supreme Court opinions. In *Moyerman v. Glanzberg*, 391 Pa. 387, 138 A.2d 681 (1958), the court reviewed a chancellor's refusal to order the removal of a building that encroached by several inches on an easement for a driveway held by appellants. The court found that the chancellor had correctly found that the encroachment did not materially affect appellants' use of the easement. Given this finding, the court found that the crucial question was whether the violation was intentional. *Id.*, 391 Pa. at 393, 138 A.2d at 685. The court explained the relevance of this question as follows:

> We are in accord with appellants' view that the crux of this case is the validity of the court's determination in this respect [i.e. as to whether the violation was intentional].
>
> In *Kern v. Greensweig*, 125 Pa. Superior Ct. 430, 436, 190 A. 182 [1937], the Court stated: " 'An injunction is not of right and the chancellor is not bound to make a decree which will do far more mischief and work greater injury than the loss he is asked to redress.' 'A suitor must not only appear in a court of equity with clean hands, but he must come with reasonable promptness, in good faith, and with a just and equitable demand.... If an injunction is prayed for where upon consideration of the whole case it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor': *Power's Appeal*, 125 Pa. 175, 186, 17 A. 254 [1889]." *See also: Baugh v. Bergdoll*, 227 Pa. 420, 422, 76 A. 207 [1910]. Upon that doctrine the lower court placed reliance, holding that the granting of an injunction in this case which would compel appellee to tear down a portion of a completely constructed dwelling would be creative of more harm to the appellee than of benfit to appellants. With that determination we are in agreement.

*However, despite that doctrine, the Court below would have had no choice but to grant the injunction if it had found that the appellee had deliberately and wilfully built upon the appellants' property or if it believed that he had intentionally taken a chance.* This rule was well stated in *Ventresca v. Ventresca,* 182 Pa.Superior Ct. 248, 253, 126 A.2d 515 [1956], wherein it was said: "Where the defendant's act is tortious or in bad faith, or where he intentionally takes a chance, injunctive relief should be granted." . . . .

. . . .

In ... [this] situation, the chancellor did not err, ... in finding that the encroachment was the result of an unintentional mistake rather than a wilful and intentional trespass. *In the absence of a wilful and intentional encroachment, since the inconvenience suffered by appellants is slight in comparison to the extreme hardship which the granting of an injunction would impose upon appellee, the action of the court below in dismissing the injunction request should be affirmed.*

*Id.,* 391 Pa. at 393–5, 138 A.2d at 684–5 (emphasis added).

In sum, *Moyerman* established that whereas in a case involving an unintentional violation of a restriction on land the chancellor must engage in a balancing of the harm that results from the violation against the harm that would result from issuing an injunction to remedy the violation, in a case involving an intentional violation application of a balancing test is improper.

Later cases, involving situations even more factually analogous to the one presented in the case before us, confirm this principle. In *Peters v. Davis,* 426 Pa. 231, 231 A.2d 748 (1967), the Supreme Court unanimously reversed the decision of the chancellor who had refused to grant an injunction ordering the removal of a dwelling intentionally constructed in violation of certain setback and sideline restrictions contained in the deed to the property. As in the instant case, the party who violated the restrictions had

done so deliberately and had continued construction even after the beneficiaries of the restriction instituted an action in equity to prevent the violation. *Id.,* 426 Pa. at 237, 231 A.2d at 751. The *Peters* court ordered that the dwelling be removed, finding that where the violation of the restriction was intentional, it did not matter that the value of it to the beneficiary was insignificant in comparison to the advantages associated with its violation since the beneficiary had a positive right to enforcement. *Id.,* 426 Pa. at 237–8, 231 A.2d at 751–2. The court stated the relevant principles as follows:

> "Where a building restriction is still of substantial value to a dominant lot equity should restrain its wilful violation. [citing an authority] To restrict the plaintiff to damages is not an adequate remedy.... Where a contract right has been invaded there is generally no question of the amount of damages but simply of the right. Clearly it would be 'only by conjecture and not by any accurate standard' that a jury could measure the damages caused to the plaintiff. [citing an authority]." Judge (later Chief Justice) KEPHART in *Dodson v. Brown,* 70 Pa.Superior Ct. 359 (1918) aptly said: "The aggrieved property owner's right is absolute. However hard his acts might be regarded, he asks the court for the enforcement of a legal right of a positive character with respect to land which it is conceded was wrongfully taken from him. He is entitled to a decree. The rule in such cases is founded on sound reason. If damages may be substituted for the land, it will amount to an open invitation to those so inclined to follow a similar course and thus secure valuable property rights. The amount of land involved does not change the situation." .... If a property owner deliberately and intentionally violates a valid express restriction running with the land or intentionally "takes a chance", the appropriate remedy is a mandatory injunction to eradicate the violation. See: *Ventresca v. Ventresca,* supra....

*Id.,* 426 Pa. at 238, 231 A.2d at 752. *See also Loeb v. Watkins,* 428 Pa. 480, 240 A.2d 513 (1968) (where restriction

on number of buildings to be erected on certain land was intentionally violated and enforcement of covenant would result in benefit to beneficiary thereof, enforcement should be had); *Hunsicker v. Katz,* 310 Pa.Super. 213, 456 A.2d 576 (1983) (unlike intentional violation cases, where violation is unintentional, equitable enforcement will be refused where balancing of harms reveals that enforcement will cause more harm than good).

In the instant case, although the chancellor took note of certain benefits that might flow from allowing the violation to continue, his Adjudication stated that he did not base his denial of relief on these possible benefits. The chancellor also specifically did not consider the hardship to appellees that would result from an order requiring removal of the road since any such hardship was self-inflicted. Finally, the chancellor did not appear to consider the commercial benefit to appellees that would flow from allowing the road to remain. This suggests that the chancellor acted in a manner consistent with the foregoing authorities insofar as he refused to balance the relative harms and benefits flowing from enforcement as opposed to non-enforcement.

However, the chancellor did impose on appellants the burden of showing that some significant benefit would flow to them if enforcement were granted. Since he found that enforcement would result in *no* significant benefit to appellants, he refused to order enforcement. Thus, the question posed is whether appellants had to demonstrate that a significant benefit would flow from enforcement and, if so, what the law defines as a "significant benefit". In other words, do *Moyerman* and *Peters* establish that all a beneficiary of a covenant needs to show to obtain injunctive enforcement is the existence of the covenant and an intentional violation thereof, or must the evidence also show that the enforcement of the covenant will result in a demonstrable benefit to the beneficiary? If the latter, what need be shown to support a finding that a significant benefit does exist and on which party does the burden of proof lie?

We conclude that even in a case involving an intentional violation of a covenant, enforcement may not be had unless it will result in a significant benefit to the beneficiary of the covenant. However, the benefit shown must only consist in the benefit that the covenant was originally intended to convey. The party opposing enforcement has the burden of showing that significant benefit no longer exists. Thus, enforcement will appropriately be denied if the party opposing enforcement can prove that, through a change of surrounding neighborhood or for other reasons, enforcement of the covenant will no longer result in the benefit it was originally intended to achieve.[2] Further, as we have already indicated, the fact that the benefit to result from enforcement may be relatively small is irrelevant where the violation was intentional.

We have deduced these principles from a review of several pertinent cases. The first is *Ventresca v. Ventresca,* 182 Pa.Super. 248, 126 A.2d 515 (1956), which was heavily relied upon by the courts in both *Moyerman* and *Peters* in deciding that a balancing of harms test in a case involving an intentional violation is inappropriate. In *Ventresca,* the court analyzed whether enforcement of a deed restriction prohibiting erection of a building within five feet of the sidelines of the lot was appropriate. The defendant had wilfully violated the restriction by building within three feet four inches of the sideline.

The court ordered enforcement after finding no ambiguity in the restriction and no laches chargeable against plaintiff. The court was careful to note that the restriction was still of substantial value to plaintiff. The court held "[w]here a building restriction is still of substantial value to a dominant lot equity should restrain its wilful violation." *Id.,* 182 Pa.Superior Ct. at 252, 126 A.2d at 518. In so holding the court specifically distinguished cases where the court had refused enforcement. In those cases the *Ven-*

2. Enforcement may also be denied where, for example, the party seeking enforcement has himself violated a similar restriction or has acquiesced in similar violations. Restatement, Property § 560–61.

*tresca* court noted that either the restriction was not clearly intended to restrain the type of conduct engaged in by defendant or that enforcement of the restriction would have resulted in no substantial benefit to plaintiff because a change in the neighborhood surrounding the land subject to the restriction had rendered the restriction futile, i.e. enforcement of the restriction could no longer result in the benefit to plaintiff that the restriction was originally intended to convey. *Id.*, 182 Pa.Superior Ct. at 251, 126 A.2d at 517 (*citing, inter alia, Price v. Anderson,* 358 Pa. 209, 56 A.2d 215 (1948)).

Cases decided more recently than *Ventresca* have reiterated the requirement of substantial benefit even where the violation was intentional. For example, in *S.H. Deitch v. Bier,* 460 Pa. 394, 333 A.2d 784 (1975), the Supreme Court reviewed a trial court order enjoining defendant from constructing a barber shop on property restricted to non-commercial uses. The violation of the restriction was intentional. The court reversed and remanded on the ground that the trial court had erred in refusing to consider whether the surrounding neighborhood had changed so that it was no longer residential and, therefore, enforcement of the restriction would not result in the benefit originally intended, i.e. preservation of a residential community. The court stated:

> Injunctive relief against violation of the obligations arising out of a promise respecting the use of land cannot be secured if conditions have so changed since the making of the promise as to make it impossible longer to secure in a substantial degree the benefits intended to be secured by the performance of the promise.

*Id.*, 460 Pa. 394 at 397, 333 A.2d at 785 (quoting Restatement (Property) § 64 (1944)). *See also Schulman v. Serrill,* 432 Pa. 206, 246 A.2d 643 (1968) (order refusing to declare building restriction null & void so as to allow defendant to use land in violation of restriction affirmed; enforcement will be refused only where there is "impossibility of accomplishment" of goal restriction originally intend-

ed to achieve and enforcement will result in "far greater hardship" than non-enforcement); *Grasso v. Thimons,* 384 Pa.Super. 593, 559 A.2d 925, 928 (1989) ("... equity will not enforce a restrictive covenant in the absence of any benefit to the party seeking enforcement of the covenant.") [3]

These cases demonstrate that the chancellor was correct in requiring that significant benefit accrue to appellants before enforcement can be ordered. However, they also demonstrate beyond cavil that substantial benefit is defined as being only the benefit that the restriction was originally intended to confer. *See Ventresca, supra; Schulman, supra.* Moreover, recent case law indicates that the burden of proving that enforcement of the restriction would be futile and not confer the benefit originally intended is on the party opposing enforcement. In *Dreher Township Board v. Solitron Development Co., Inc.,* 333 Pa.Super. 33, 481 A.2d 1207 (1984), a panel of this court considered whether a restriction on the type of sewage disposal system to be built on certain property should be declared enforceable. The panel stated:

> Cases are legion wherein courts have held that the character of a neighborhood has changed thereby negating the usefulness of the restrictive covenant.

3. In *Grasso v. Thimons, supra,* a panel of this court addressed an apparently unintentional violation of a restriction limiting the use of certain property to residential uses. As we have indicated in text above, in finding that injunctive relief was appropriate the *Grasso* court reiterated that benefit to the party seeking enforcement was necessary. The court cited *Loeb v. Watkins,* 428 Pa. 480, 240 A.2d 513 (1968), an intentional violation case, in support of this proposition and appended a footnote indicating that the various members of the panel in *Loeb* had differed as to whether substantial benefit need be shown to secure equitable enforcement of a negative restriction on the use of land. In this footnote, the panel correctly indicated that a majority of the *Loeb* court would require a showing of benefit even in an intentional violation case. To this discussion we add only that *Loeb,* in which none of the competing opinions commanded a majority of the court, does not undermine our conclusions that in an intentional violation case the benefit from enforcement need only be that which the restriction was originally intended to convey, that enforcement will be denied only where that benefit can no longer be secured due to changed circumstances, and that to balance the relative harms is generally inappropriate in such a case.

. . . .

*Daniels v. Notor,* 389 Pa. 510, 133 A.2d 520, 523 (1957) quoting fr. *Henry v. Eves,* 306 Pa. 250, 260, 159 A. 857, 860 [1932].

. . . .

However, notwithstanding any change in character or use of land, "equity will restrain a violation of a building restriction if enforcement remains of *substantial* value to the dominant tenement." *Daniels v. Notor, supra,* 133 A.2d [at] 525. *See also Peters v. Davis,* 426 Pa. 231, 231 A.2d 748 (1967), *Rome v. Rehfuss,* 391 Pa. 82, 137 A.2d 233 (1958). Here, the covenants were expressly created by the developer, clearly intended to apply to all subsequent purchasers of lots within the development, and clearly intended to prohibit any future buyer from installing an on-site sewage module.

. . . .

In order to effect the discharge of the covenants, the burden of proof is on the owners of the servient tenements [those to which the restriction applies] to show that the original purpose and intent of the restrictions "have been materially altered or destroyed" by "changed conditions" and that "substantial benefit and advantage may not inure to the owners of the dominant tenement by the enforcement of the restrictions." *Rieck v. Virginia Manor Co.,* 251 Pa.Super. 59, 380 A.2d 375, 378 (1977). *Id.,* 333 Pa.Superior Ct. at 40–41, 481 A.2d 1211–12.

These authorities demonstrate that the chancellor in this case erred in imposing on appellants the burden of showing a significant benefit beyond the benefit that the restriction was originally intended to convey. The chancellor found that the covenant in question did prohibit the building of a road that would destroy the cul-de-sac feature of the development. Given this finding, with which we agree, all appellants needed to show was that they were the beneficiaries of the restriction and that the appellees had

intentionally violated the restriction and destroyed the cul-de-sac feature. It was then the burden of appellees to show that enforcement of the restriction would not confer on appellants the benefit it was originally intended to confer. This appellees failed to do. They offered no proof that removal of the offending road would be futile because for some reason it would not result in restoration of the cul-de-sac feature. They offered no proof, for example, that the cul-de-sac feature had already been impaired in some other way. Appellees argued only that the loss of the cul-de-sac feature did not harm the general residential quality of the neighborhood or result in a loss of appellants' property values. This was not enough.

Appellants had a right to the cul-de-sac feature which the chancellor found to be guaranteed by the restriction. This alone is a significant benefit. As the Supreme Court long ago stated, "[t]he value referred to in the authorities is the benefit to the owner of the dominant tenement [i.e. appellants] in the 'physical use or enjoyment of the land possessed by him.'" *Price v. Anderson*, 358 Pa. 209, 219, 56 A.2d 215, 220 (1948) (quoting Restatement (Property) § 537). This was the benefit the restriction was intended to convey. As long as enforcement of the restriction to remove appellees' intentional violation thereof would be effective in restoring this benefit, enforcement should have been ordered.

We are not convinced to the contrary by those authorities relied upon by the chancellor in support of his denial of relief. The chancellor relied upon *Petry v. Tanglwood Lakes, Inc.*, 514 Pa. 51, 522 A.2d 1053 (1987) and *Food Fair Stores, Inc. v. Kline*, 396 Pa. 397, 152 A.2d 661 (1959). Neither case is inconsistent with the result we reach today.

In *Petry*, the Supreme Court was concerned with the propriety of equitable enforcement of an *affirmative* covenant requiring a developer of a vacation community to construct a lake near appellant's home in the community. The court affirmed the trial court's refusal to order enforcement, concluding that appellant had an adequate remedy at

law in the form of a suit for money damages measured by the diminution in value of her home. *Id.* 514 Pa. at 57–61, 522 A.2d at 1056–57. The court found that appellant's interest in having the lake built was outweighed by other factors militating against equitable enforcement, such as the fact that appellant was chargeable with having known that the lake construction might never come to fruition and that the evidence showed that ordering enforcement would adversely affect the interests of other lot owners in the community.

*Petry* is simply inapposite to the case before us. The instant case involves a negative covenant, a situation specifically distinguished by the *Petry* court. Moreover, there is no basis for finding that appellants had an adequate remedy at law.

We find *Food Fair Stores, Inc. v. Kline* equally inapposite. First, as the *Food Fair* court was careful to note, that case involved a *de minimus* violation of a commercial *lease* and was a dispute between two lessees who were business competitors. It was not a dispute between an owner of land and the conveyor thereof. Thus, as the court indicated, the interests involved were purely competitive interests of the lessees. The court denied enforcement of the precise terms of the lease because to do so would have required removal of a large structure and would have resulted in no perceptible advantage to the party seeking enforcement. *Id.* 396 Pa. at 399–400, 152 A.2d at 662–663. Most importantly, there is no indication in the *Food Fair* opinion that the violation was intentional. In contrast, here we are dealing with a dispute between the conveyor of land and a land owner and the violation of the restriction was intentional and not de minimus. Moreover, the interest of appellants is not competition, but rather their interest in having the kind of community that appellees promised. In fact, it is the appellees who have a purely commercial interest.

In sum, we find that the chancellor clearly abused his discretion in refusing to order removal of the road. Equity

is not done where a developer is permitted to make promises concerning the private and exclusive nature of the development he/she is constructing in order to lure people to purchase in that development and is then allowed to commit intentional violations of those promises. It is no answer to appellants to say, as the chancellor here did, that the cul-de-sac feature of their neighborhood is not a significant benefit to them and that all they really need is a generally residential quality in their neighborhood. The cul-de-sac feature of this neighborhood was significant enough for appellees to use it to market the homes in the development and it is significant enough to be protected against intentional violations by appellees.

The order of the trial court is reversed. The case is remanded for entry of an order consistent with this opinion. Jurisdiction is relinquished.