## Woodruff v. Pavanello

*John E. Roberts,* for plaintiffs.
*Vincent G. Pavanello* and *Paula Pavanello,* pro se.

FORD, *J.,* December 15, 1995—This equity action was brought by plaintiffs, Oren M. Woodruff and Pamela L. Woodruff, husband and wife, and David E. Davis

and Joanne E. Davis, husband and wife, who own real estate near the property owned by the defendants, Vincent G. Pavanello and Paula Pavanello, husband and wife. In order to preserve their own investment in their real estate, the plaintiffs brought this action. They seek to compel the defendants to comply with the Declaration of Protective and Restrictive Covenants, Bellgate Estates-Section I, which is dated September 13, 1989 and was filed in Lehigh County miscellaneous volume 606, page 727 et seq. The first restrictive covenant of the declaration provides: "The minimum size of any dwelling to be erected on a lot in the development shall be at least 2,500 square feet of living area, excluding basement, garage, porches, patios and breezeways."

The defendant, Bellgate Associates (a partnership), was the developer of Bellgate Estates. Shortly before hearing in this matter, which was conducted on June 7, 1995, Bellgate Associates reached a settlement with the plaintiffs. Therefore, this defendant played no part in the hearing.

Defendants, Vincent G. Pavanello and Paula Pavanello (who will hereinafter be called "defendants" in view of the settlement that was reached with Bellgate Associates), were served a copy of the complaint on June 7, 1994. A default judgment was entered against the defendants on September 9, 1994, for failure to file an answer. Although proceedings were never brought by the defendants to open this judgment, the court had concerns at the hearing as to whether the judgment was properly taken. The defendants, who have not been represented by counsel throughout these proceedings, filed a three paragraph letter, which bears the date of August 2, 1994, and which was filed in the clerk of courts office on August 4, 1994. At about that same time, the defendants did a separate letter

to counsel for the plaintiffs and a separate letter to the judge then assigned this matter. In all three of these letters, the defendants denied the allegations of the complaint and stated their defense to the action that the construction "is in compliance with deed restrictions for said development in regards to square footage." In view of the decree entered here and the fashion in which we proceeded at the hearing of June 7, 1995, even if the default judgment should not have been entered, there is no prejudice to the defendants.

From the plaintiffs' perspective, the purpose of the June 7, 1995 hearing was to fashion the relief to which the plaintiffs may be entitled in view of the taking of this default judgment in the equity action. It also gave the court the chance to independently determine whether the defendants have at least 2,500 square feet of living space in the now completed residence.

Neither in the answer that was filed by the defendants nor at any time during the course of the hearing did the defendants contend that these deed restrictions are ineffective or inapplicable to them as the record owners of lot no.14, section I in Bellgate Estates. In fact, the effectiveness and application of these deed restrictions have been acknowledged throughout the proceedings.

The defendants should have known that the residence that they planned to construct in this development required at least 2,500 square feet of living space. As stated, the deed restrictions setting forth this requirement were a matter of public record. Before the defendants began construction, they may have been misled somewhat by brochures or other writings that were produced by Bellgate Associates which indicated that the minimum square foot requirement was 2,400 square feet. While the defendants should have known of the square footage requirement due to record notice, they did not

actually know of it when they purchased the lot and began construction of the home.

The defendants purchased the real estate in late 1993. They secured a building permit on March 1, 1994. The plans were drawn and construction began. Very early in the construction, after the foundation was laid, the defendant, Mr. Pavanello, received a phone call from a plaintiff, Mrs. Joanne E. Davis. In the course of that phone conversation, Mrs. Davis advised Mr. Pavanello of the 2,500 square foot living space requirement. At about the same time, Mr. Pavanello received a letter from an attorney, whose name he did not recall, which indicated that the restrictive covenant requires living space of at least 2,500 square feet.

In response to the information provided by Mrs. Davis and the information contained in the letter from the attorney, Mr. Pavanello made some alterations to the building plan in an attempt to comply with the square footage requirement. However, while Mr. Pavanello believed that the alterations may have taken the square footage above 2,500 square feet, they did not.

Under all of these circumstances, we find that the defendants did not willfully disregard the restrictive covenant pertaining to minimum square feet. While they were careless in the fashion in which they first approached construction and in later making alterations to the plans, the restrictive covenant was not defiantly disregarded.

In the course of our view of the premises, we determined that the defendants' beautiful home fits very well into the aesthetic plan for this development. Accordingly, to the lay eye, a view of the premises does not readily reveal that the living space of the premises is below 2,500 square feet. Consequently, we carefully studied the construction plans for the home and determined that the square footage of living space is slightly in excess of 2,420 square feet. From "living

space," we have excluded the much contested storage area above the built-in garage. We exclude the storage area because, while it is improved with drywall, carpeting and some furniture, the height of that area is not commodious for most of the adult population and many children.

Plaintiffs are correct that, technically, the defendants have not complied with the square footage requirement in that the defendants are approximately 80 square feet, give or take several square feet, short of the restrictive covenant requirement. Our view of the home reveals that, to require the defendants to make the necessary alterations to the home, would require the expenditure of substantial funds, detract from the aesthetics of the home and, consequently, of the development, and other hardships. One way of meeting the square footage requirement would be to further improve the storage area above the garage. That would require providing a different entrance to the storage area and also breaking through the garage roof to increase the height of the room. Another possibility is to extend the flooring on the second floor of the home across the present two-story high foyer area so that the foyer would only be one-story high. Another possibility is to add an addition to the home. We are sure there are other possibilities as well. All of these would be very expensive for the defendants, would cause great inconvenience, and some would detract from the appearance of the home.

We have considered the expense and inconvenience to the defendants in light of what can be accomplished by the addition of approximately 80 square feet to the home. If one either measures off or otherwise envisions the relatively small living space area that is covered by 80 square feet, the wisdom and fairness in requiring such a change are far from evident.

"A chancellor is not bound to make a decree that will do more harm and work greater injury than the

loss he is asked to redress . . . Nor will he act unless there is a real and special injury . . . ." *Food Fair Stores Inc. v. Kline,* 396 Pa. 397, 399, 152 A.2d 661, 662 (1959). (citations omitted) In applying this principle, the court considers whether a violation of a requirement is de minimis. In this particular case, the violation that exists is a de minimis violation.

It was stated in *Katzman v. Anderson,* 359 Pa. 280, 285, 59 A.2d 85, 87 (1948):

"Nor will equity grant injunctive relief if the enforcement of a restriction would make the land unfit or unprofitable for use and development, or result in a far greater hardship to the servient than a benefit to the dominant tenement. These principles of equity jurisprudence have been proclaimed in many cases: . . . ." (citations omitted)

Here, equity should not be enforcing technical adherence to this restrictive covenant which will work a hardship to the defendants far greater than any benefit of the restriction to the plaintiffs.

The plaintiffs have brought suit in order to preserve their investments in their own residences located in this development. Plaintiff, Oren Woodruff, testified that he wants to make sure that the integrity of this restrictive covenant remains. We do not ignore this failure to comply. By our decree, we do nothing to jeopardize the integrity of the restrictive covenant. The investments of these plaintiffs are not jeopardized by our decree. Rather, our decree recognizes that the defendants have provided slightly over 96 percent of the living space in their residence required by the restrictive covenant and that, to require them to add the additional approximately 80 feet, would work an undue and inexcusable hardship upon them when one considers the cost of correction as well as the lack of maliciousness in their conduct.

While the court has broad discretion in equity, it cannot order the payment of counsel fees unless there is specific authorization for that. As stated in Standard Pennsylvania Practice 2d, section 79:186, pages 337-38:

"Since it is contrary to the policy of the Commonwealth of Pennsylvania to allow a party to an action in equity, in ordinary cases, any compensation, as costs in the equity action, for his expenses in retaining counsel to advise upon and try his case, counsel fees in an adversary action in equity are generally not allowable as costs associated with the action in equity."

We have looked at exceptions recognized in the reported cases that we have found. No exception is applicable here. Additionally, counsel fees under 42 Pa.C.S. §2503 are not permitted in an action of this sort.

In view of the defendants' securing of the default judgment and in view of the technical non-compliance with the restrictive covenant, we do award plaintiffs record costs as specified in the decree.

## DECREE

Now, December 15, 1995, after a hearing conducted on June 7, 1995, after a view of the premises in question, and for the reasons set forth in the accompanying opinion, it is hereby ordered and decreed as follows:

(1) There has been compliance by defendants, Vincent G. Pavanello and Paula Pavanello, husband and wife, with covenant no. 1 of the Bellgate Estates-Section I, Restrictive Covenants, recorded at miscellaneous volume 606, page 727 et seq. and, accordingly, these defendants need not vacate their residence nor make alterations to the residence located at lot no. 14, section I, Bellgate Estates Subdivision, Lower Milford Township, Lehigh County, Pennsylvania, the entry of a default judgment against these defendants notwithstanding.

(2) The prayer of the plaintiffs for counsel fees is denied.

(3) The prayer of the plaintiffs for record costs is granted and defendants shall pay to plaintiffs all record costs for the filing of the within complaint and service charges as to these two defendants, within 30 days of the date of this order.