# North Chestnut Hill Neighbors, Inc. v. Chestnut Hill College, Inc.

C.P. of Philadelphia County, No. 152 CD 2013.

*Vincent B. Mancini, Henry Louis Schirner* and *Paul J. Toner*, for appellants
*Peter Foster Kelsen, G. Craig Lord, Lavurence Shtasel* and *Jonathan Scott Goldman,* for appellee

TUCKER, *J.*, March 21, 2013—

## I. Procedural History

This matter comes before the court on appeal from an order granting Chestnut Hill College's (hereinafter referred to as "appellee") motion for summary judgment. order Entered by J. Tucker (12/26/2012). The court, upon consideration of the motion for summary judgment and responses thereto, entered an order in favor of appellee, and dismissing the complaint in declaratory judgment filed by North Chestnut Hill Neighbors, Inc. and Northwest-Wissahickon Conservancy, Inc. (hereinafter collectively referred to as "appellants") in the Philadelphia County Court of Common Pleas. *Id.* The basis of that judgment is herein on appeal.

On July 15, 2011, appellants filed a praecipe to issue writ of summons in the Philadelphia Court of Common Pleas. Prae. to issue writ of summons (07/15/2011). On September 7, 2011, appellants filed a complaint against appellee, requesting a declaration that certain real property located in Philadelphia be subject to deed restrictions prohibiting appellee's proposed development of said property. Compl. filed (09/7/2011). On October

7, 2011, appellee filed a notice of program dispute, seeking to reassign the case to the Philadelphia Court of Common Pleas Commerce Program. Not. of prog. dispute (10/07/2011). Appellants filed an answer to the notice of program dispute, and appellee filed a reply in support of the notice. Ans. (mot.pet.) filed (10/13/2011); mot./pet reply filed (10/17/2011). The court denied appellee's request to reassign the case. Order entered by J. Herron (11/18/2011).

On October 27, 2011 appellee filed preliminary objections to appellant's complaint in declaratory judgment. Prelim. objections (10/27/2011). On November 17, 2011, appellants filed an answer to appellee's ppreliminary objections. ans. to prelim. objections (11/17/2011). Appellee thereafter filed a reply in support of the preliminary objections, and appellants filed a sur-reply in support of the answer to the preliminary objections. Reply-prelim. object. filed (11/29/2011); reply-prelim. object. filed (12/06/2011); praecipe to suppl./ attach. filed (12/27/2011). On February 3, 2012, the court overruled appellee's preliminary objections. order entered by J. Panepinto (02/03/2012).

On February 23, 2012, appellee filed an answer to the complaint for declaratory judgment. Ans. (02/23/2012). After discovery in this matter closed, the parties filed cross-motions for summary judgment on November 5, 2012. Discovery hearing reqst. filed (08/06/2012); order entered by J. New (08/16/2012); appellee mot. for summ. j. (11/05/2012). Appellant mot. for summ. j. (11/05/2011). On December 5 and 6, 2012, respectively, appellants and appellee filed answers to the motions for summary judgment. Ans. to appellee mot. for summ.

j. (12/05/2012). Ans. to appellant mot. for summ. j. (12/06/2012). On December 26, 2012, this court entered an order granting appellee's motion for summary judgment and dismissing the complaint for appellants' lack of standing. Order entered by J. Tucker (12/26/2012). The relevant facts are as follows:

## II. Facts

Appellee is a Pennsylvania nonprofit corporation and institution of higher learning located in Philadelphia County. Compl. (09/07/2011). Appellants are two Pennsylvania nonprofit corporations and community associations located in Philadelphia County. *Id.* Appellants were formed for the purpose of representing those situated in the immediate vicinity of the property at issue. *Id.* Specifically, appellant North Chestnut Hill Neighbors, Inc. is an association that advocates for the interests of North Chestnut Hill property owners. *Id.* Appellant Northwest-Wissahickon Conservancy, Inc. was incorporated to insure the "preservation, and enhancement of the long term quality of life" and conservation of" natural, historical, and cultural resources" in Wissahickon Creek Valley. *Id.*

The property at the center of this litigation is alternatively known as The "Sugarloaf" Estate (hereinafter referred to as "Sugarloaf"). *Id.* Sugarloaf is, among other things, located in the neighborhood known as North Chestnut Hill and situated entirely within the Wissahickon Valley Watershed. *Id.* It is also characterized by its "historical, geographical, environmental, horticultural and cultural significance." *Id.* In 2006, Appellee purchased Sugarloaf for the purpose of expanding its campus. *Id.* In 2011, appellee submitted

its master plan for the development of Sugarloaf; the master pllan included a proposal to develop Sugarloaf as a second campus for appellee. *Id.*

Consistent with appellee's vision for the property, the master plan laid out the proposed design, construction, renovation, and/or demolition of throughways, residence halls, academic buildings, and parking facilities on Sugarloaf. Compl. (09/07/2011). Upon notice of the master plan, appellants and several other neighborhood organizations objected to the master plan. *Id.* In January 2010, appellee responded to these concerns by agreeing to submit certain disputed issues to non-binding mediation for the purpose of seeking "guidance in establishing a framework in which to conduct negotiations with [Appellee]" with respect to the master plan. *Id.* These negotiations did not yield an agreeable solution. *Id.*

Appellees sought rezoning of both its existing campus and Sugarloaf. Compl. filed (09/07/2011). On March 11, 2011, appellee submitted the master plan to the Philadelphia Planning Commission for approval; the master plan was approved by the Planning Commission and submitted to Philadelphia City Council for approval on April 19, 2011. Prelim. obj. (10/27/2011). A rezoning bill concerning Sugarloaf was introduced on April 28, 2011; the rezoning bill was approved by the Planning Commission and submitted to City Council on May 17, 2011. Compl. filed (09/07/2012); Prelim. Obj. (10/27/2011). On June 16, 2011, City Council passed the rezoning bill and approved the master plan on June 16, 2011. Prelim. obj. (10/27/2011). The resulting ordinance was signed into law June 22, 2011. *Id.*

As a direct result of the foregoing, appellants sought a declaration that Sugarloaf is subject to deed restrictions prohibiting appellee's proposed developments, regardless of appellee's acquisition of the required approvals by writ of summons filed July 15, 2011. *Id.* The three separate deed restrictions cited by appellants are hereinafter respectively referred to as: (1) the Houston deed restriction, (2) the Greenfield deed restriction, and (3) the Growing Greener Restriction. Compl. (09/07/2011). The Houston deed restriction was imposed by the estate of the railroad manager and prominent benefactor and preservationist of Fairmount Park and North Chestnut Hill, Henry Howard Houston. *Id.* Houston and his heirs have a long history concerning the creation and preservation of Fairmount Park and North Chestnut Hill. *Id.* The Houston deed restriction applies to a little less than nine (9) of Sugarloaf's approximately thirty (30) acres. *Id.* In relevant part, the Houston deed restriction requires the parcels subject to the restriction to be used for residential purposes unless any part is acquired by the City of Philadelphia for park purposes:

> The said Lots or pieces of ground shall always be used exclusively for residential purposes and no buildings or other structures of any kind whatsoever shall ever be erected, used or sustained thereon, or on any part or subdivision thereof for other than residential purposes. Provided however, that if said Lots or pieces of ground or any part thereof, shall be acquired by the City of Philadelphia or the Commissioners of Fairmount Park for Park purposes, the foregoing restriction to residential use shall be of no further force and effect.

*Id.*

The Greenfield deed restriction was imposed by the Greenfield Foundation for the purpose of limiting development of Sugarloaf. *Id.* That restriction is contained in a 1968 deed of transfer from the Greenfield Foundation to Temple University, the former owner of Sugarloaf[1] providing that:

> In the event that, at any time hereafter, however remote, the Grantee shall be of the view that such use is not a reasonable and proper use of the property, and that it should be discontinued, the Grantee shall communicate such view to the Grantor and shall disclose to the Grantor (a) the considerations upon which such view is based and (b) the proposed alternative use or disposition of the property upon discontinuance of its use as a conference center. Before the Grantee shall act to effectuate a discontinuance of the property as a conference center or to make any other use or disposition of it, the Grantor may require the Grantee [to remit proceeds resulting from disposition of the property or reconvey the property to Grantor]... Under all circumstances, the Grantee agrees to guarantee the use of the property to maintain its natural beauty and preserve its essential character consistent with the character of the neighborhood surrounding it.

*Id.* The Growing Greener restriction arose in connection with appellee's acquisition of Sugarloaf when appellee applied for a Community Conservation Partnerships Program grant. *Id.* In connection with that application,

---

1. The Greenfield Foundation transferred Sugarloaf to Temple University in 1968; Temple University transferred Sugarloaf back to the Greenfield Foundation in 2005. Complaint Filed (09/07/2011). Sugarloaf was purchased in 2006 by appellee from Greenfield Foundation. *Id.*

Appellee voluntarily executed a declaration with the Pennsylvania Department of Natural Resources imposing certain restrictions upon a designated area of Sugarloaf. *Id.*

The court, after giving full consideration to appellants' request and appellee's opposition, dismissed the complaint for appellants' lack of standing. Order entered by J. Tucker (12/26/2012). Appellants timely appealed the court's December 26, 2012 order. Appeal to Cmwlth. Ct. (01/25/2013). On January 31, 2013, the court ordered appellants to file a concise statement of matters complained of on appeal pursuant to Pa. R.A.P. 1925(b) ("1925(b) statement"). Order entered by J. Tucker (01/31/2013). On February 15, 2013, appellants filed a response. 1925(b) statement (02/15/2013). Due to the lengthiness of appellants' 1925(b) statement, the court will not reproduce the entire statement per its usual custom. Instead, the court perceives the issues as follows:

> a. Whether the court committed an error of law and/ or abuse of discretion when it dismissed the above-captioned matter on the basis of "standing" after another judge in this case ruled that plaintiffs did have standing as third-party beneficiaries of the Sugarloaf restrictions?

> b. Whether the court committed an error of law, abuse of discretion and/or capriciously disregarded the record evidence when it ruled that plaintiffs lacked standing as third-party beneficiaries of the restrictive covenants recorded against Sugarloaf to enforce those use restrictions?

A. discussion ensues:

## III. Legal Analysis

*a. The court properly granted appellee's motion for summary judgment because the prior order overruling appellee's preliminary objections did not preclude the court from addressing the issue of appellant's standing.*

Appellants argue that the court was barred from considering the issue of appellants' standing because the previous court resolved that particular issue in ruling on appellee's preliminary objections. 1925(b) Statement (02/15/2013); appellants' mot. for summ. j. (11/05/2011); ans. to appellee mot. for summ. j. (12/05/2012). Specifically, appellants submit that the matter was already litigated and thus became the law of the case because it was raised by appellee in its preliminary objections. 1925(b) Statement (02/15/2013). In support of this contention, appellants point to the general rule that, once an issue is resolved, parties are barred from re-litigating the issue and courts of coordinate jurisdiction are prohibited from entertaining the issue under the doctrines of "collateral estoppel, *res judicata*, and/or the law-of-the-case." *Id.* Appellants point out, and appellee does not dispute, that there have been no intervening changes of fact or law permitting the court to reconsider the issue of appellants' standing. Although appellants correctly adduce the general principles of the "coordinate jurisdiction doctrine," their application of those principles is fundamentally incorrect.

It is well settled that "under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 425 (Pa. 1997),

citing *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). This rule is based on the sound policy of promoting finality in pretrial proceedings, judicial economy and efficiency. *Id.* It also serves "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Ryan v. Berman*, 813 A.2d 792, 795 (Pa. 2002), quotiong *Starr, supra*. Departure from this rule is only permitted under exceptional circumstances. *Id.* When deciding how to apply these principles to prior court rulings, the court must determine where the prior ruling occurred in the context of the procedural posture of the case. *Riccio*, 705 A.2d at 425, citing *Goldey v. Trustees of the Univ. of Pennsylvania*, 675 A.2d 264, 267 (Pa. 1996). As the Supreme Court explained in *Goldey*:

> *Where the motions differ in kind, as preliminary objections...differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion.* However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Goldey*, 675 A.2d 264 at 267 (emphasis added). Thus, the court must consider appellee's motion for summary judgment in the broader procedural context of the litigation.

Determining the applicability of the coordinate

jurisdiction rule in the instant case does not require a novel analysis. Indeed:

> ...is not intended to preclude the granting of summary judgment following the denial of preliminary objections. "The failure to present a cause of action upon which relief can be granted may be raised at any time. A motion for summary judgment is based not only upon the averments of the pleadings but may also consider discovery depositions, admissions and affidavits."...We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then stands warrants such action.

*Id.* (quoting *Salerno v. Philadelphia Newspapers, Inc.,* 546 A.2d 1168 (Pa. 1988) (emphasis added) (citation omitted)). Accordingly, it is established jurisprudence that a court ruling on a later motion for summary judgment is not precluded from granting relief previously denied by another court in ruling on preliminary objections. *Koresko v. Farley,* 844 A.2d 607, 614- 615 (Pa. Cmwlth. 2004). Therefore, appellants' argument is specious and contradictory, and the court properly entertained appellee's motion for summary judgment.

*b. The court properly granted appellee's motion for summary judgment because appellants lacked standing to enforce the deed restrictions imposed against the property at issue.*

The linchpin of the dispute in this case concerns three separate deed restrictions, namely: (1) the Houston Deed restriction, (2) the Greenfield Deed restriction, and (3) the Growing Greener restriction. Compl. (09/07/2011). The essential issue underlying appellants' lawsuit and

appellee's related motion for summary judgment is whether appellants have standing to bring the underlying complaint in declaratory judgment by virtue of the three deed restrictions. As a preliminary matter, neither party disputes the existence of the three deed restrictions. Significantly, the court is not required to resolve the underlying factual disputes concerning the deed restrictions themselves. Instead, the focus of the court's analysis was purely upon whether appellant's have standing in the instant matter.

Under the Pennsylvania Rules of Civil Procedure, summary judgment is proper:

1. Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report; or

2. If, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P.1035.2. Under this standard, a movant may successfully obtain summary judgment in their favor by demonstrating that the record does not contain sufficient evidence of facts to make out a prima facie cause of action. *Id.* (Note). In considering a motion for summary judgment, the court views the record in the light most favorable to the non-moving party, and resolves all doubts as to the existence of a genuine issue of material fact against the moving party. *Buffalini* by *Buffalini v. Shrader*, 535 A.2d

684, 686 (Pa. Cmwlth. 1987).

In order to have standing, appellants must demonstrate that they are "adversely affected by the matter", namely that appellants have an interest in the outcome of the instant complaint in declaratory judgment that is "substantial, direct, and immediate." *Koresko*, 844 A.2d at 616 (citations omitted). "A restrictive covenant is a restriction in an instrument relating to real estate by which the parties pledge that something will not be done." *Doylestown Twp. v. Teeling*, 635 A.2d 657, 661 (Pa. Cmwlth. 1993). In Pennsylvania, restrictive covenants, although not favored by the law, are legally enforceable. *Id.* As such "[t]he persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise." *Mariner v. Rohanna*, 92 A.2d 219, 220 (Pa. 1952). Indeed, third parties may be made the beneficiaries of a restriction and may enjoin its breach so long as it is clearly shown that the covenant was for their benefit. *Id.* at 221.

In order to establish standing as a third party beneficiary of a restrictive covenant, appellants must show that it was the "intention of the parties, and it must appear from the terms of the grant or from the situation of the parties and the surrounding circumstances that it was the intention of the grantor, when inserting the restriction, to create... [an] equity... which would inure to the benefit of complainant's land and equitably be annexed as an appurtenance." *Fey v. Swick*, 454 A.2d 551, 554 (Pa. Super. 1982) (internal citation omitted) (discussing the right of a person not a party thereto to enforce, in equity, a restrictive covenant); *Vernon Twp. Volunteer Fire Dep't, Inc. v. Conner*, 855 A.2d

873, 879-880 (Pa. 2004) (discussing the interpretation of restrictive covenants generally). In sum, Pennsylvania courts allow third party beneficiaries standing to enforce restrictive covenants in two instances: (1) where plaintiffs are clearly identified as the third party beneficiaries of the restriction; and (2) where plaintiffs are given rights to enforce the restriction through a planned subdivision with a shared restrictive covenant. *Fey*, 454 A.2d at 554, *Mariner*, 92 A.2d at 220-221; *Gey v. Beck*, 568 A.2d 672, 676 (Pa. Super. 1990).

In this case, appellants are not the promisee of the three deed restrictions; therefore, in order to have standing to enforce the deed restrictions, appellants must show that they qualify as third-party beneficiaries of the restrictive covenants contained in one, two or all three deed restrictions. First, appellants names do not appear anywhere in the restrictive covenants, nor are their property interests identified in the restrictive covenants. Compl. (09/07/2011). Simply put, there is no clear indication that appellants were intended as third party beneficiaries to the deed restrictions.

The Growing Greener deed restriction specifically states that "This restriction is enforceable by the [Department of Conversation and Natural Resources] and its successors." *Id.* Thus, the intent of the grantor in the Growing Greener restriction was for this restriction to be enforceable only by a government agency; since appellants are not the Department of Conversation and Natural Resources, or its successor, appellants have no standing to enforce the Growing Greener deed restriction.

The Greenfield deed restriction does not specifically

state who can enforce the deed restriction; however, a review of the Greenfield deed restriction shows that there are only two clearly identified parties, Greenfield and Temple. At best, the Greenfield deed restriction requires that the property maintain the "character of the neighborhood" surrounding the property. This language, "character of the neighborhood," does not clearly identify appellants as intended beneficiaries of the restrictive covenant. In addition, Greenfield deed restriction does not relate to a common scheme, plan or subdivision.

Finally, a review of the Houston deed restriction shows that it does not relate to a common plan, and Plaintiffs are not clearly identified as intended beneficiaries of the Houston Clause deed restriction. Indeed, the Houston Deed Restriction does not clearly identify any entity other than those it references by name.

Appellants aver that they represent the interests of parties that might conceptually have standing. However, appellants have failed to make a cogent and convincing argument to this end. Other than certain opinion testimony provided by appellants, there is little persuasive evidence indicating this to be the case. Third and last, appellants have not demonstrated that they were given rights to enforce the prior deed restrictions. To the extent that appellants rely on and cite a number of cases in which they claim that neighbors, or neighborhood associations, have been granted standing to enforce restrictions, a review of these cases reveals that all of the cases cited by plaintiffs are inapplicable because they either deal with planned communities/subdivision or are zoning cases which do not deal with restrictive covenants that run with the land. Appellants do not have standing to enforce any of the three

194

deed restrictions.

## IV. Conclusion

The court was not precluded from addressing the issues raised in appellee's motion for summary judgment by virtue of the prior order disposing of the same issues in the context of appellee's preliminary objections. Finally, under Pennsylvania Law the court finds no basis of standing for appellants to seek the requested relief. Appellants had ample opportunity to demonstrate standing under well settled principles of law, but were unable to do so. The court's ruling should stand.