Norbert E. BARTHELMES and
Carol A. Barthelmes, His
Wife, Appellants,

v.

Lewis KEITH and Cheryl R. Keith, His Wife, Franklin Manor Limited, a Limited Partnership, M. Jay Weir, Appellees.

Superior Court of Pennsylvania.

Argued March 24, 1999.
Filed June 7, 1999.

of ineffectiveness against all prior counsel.

M. Scot Curran, Washington, for appellants.

Steven R. Wolf, Canonsberg, for appellees.

Before DEL SOLE, JOYCE and BECK, JJ.

JOYCE, J.:

¶ 1 This is an appeal from the final decree[1] entered in the underlying equity action commenced by Appellants, Norbert Barthelmes and his wife, Carol, in which they sought to enforce restrictive covenants set forth in their property deed. For the reasons set forth below, we affirm. Before addressing the merits of Appellants' claims, we will briefly recount the pertinent facts of this case.

¶ 2 Franklin Manor Limited (Franklin Manor), is a limited partnership which owned a tract of land situate in South Franklin Township, Washington County.[2] Franklin Manor is in the process of developing the tract in a subdivision known as South Franklin Farms. The recorded plans for the part of the development at issue here do not contain any restrictive covenants.

¶ 3 In April of 1989, Franklin Manor conveyed lots 101 and 102 to Appellants.

1. Following the denial of their post-trial motions, Appellants praeciped for entry of a final judgment. The record reflects that the underlying action was in equity, rather than at law. Accordingly, the chancellor issued an adjudication and decree *nisi* as required by Pa. R.C.P. Rule 1517(a). Under these circumstances, a final decree rather than a final judgment ought to have been entered. *See* Pa.R.C.P. Rule 227.4(1) (providing for the entry of a decree *nisi* as a final decree). Because this appeal is properly before this Court, we will disregard this defect.

2. M. Jay Weir is a general partner in Franklin Manor.

The deeds to these lots contain various restrictive covenants that provide, *inter alia*, that "[n]o lot in the plan shall be divided, subdivided or rearranged in any manner which shall result in a plot of less than 21,780 [square feet], nor shall any dwelling house be built on any lot created out of any of the said lots or plots which contain less than 21,780 [square feet] in area." Other deeds conveyed both before and after Appellants' deed contained similar restrictive covenants. Except for Appellants' deed, all of the other deeds in the plan contain a covenant reducing the lot size restriction to 17,500 square feet. Notwithstanding this fact, all of the other lots in the plan, except for lot 100, contain more than 21,780 square feet.

¶ 4 Blaine Beeghly, the general manager of Franklin Manor, explained that South Franklin Township initially had no ordinance governing lot size. During the course of the South Franklin Farms development, however, the township contemplated the adoption of a minimum lot size of 21,780 square feet. The township ultimately enacted an ordinance requiring that lots contain a minimum of 20,000 square feet. Franklin Manor inserted the larger lot size restriction into Appellants' deed because of the township's proposed action and to prevent further subdivision of the two lots purchased by Appellants.

¶ 5 Due to the actions of the township in enacting a minimum lot requirement, Franklin Manor reconfigured lots 99 and 100. Lot 100 was sold to Lewis Keith and his wife, Cheryl, (Keiths) in November of 1995. The Keiths' lot contains 20,802 square feet, in compliance with both the restrictive covenant set forth in their deed and the township ordinance.[3] The Keiths, who are in the home construction business, planned to construct a home on the lot and sell it. After acquiring the property, they obtained the requisite permits and approval and commenced construction.

¶ 6 Appellants objected to the Keiths' proposed development and demanded that they cease construction. When the Keiths refused, Appellants commenced this equity action in March of 1996 against Appellees, the Keiths, Franklin Manor and M. Jay Weir. After their complaint was filed, Appellants moved for a temporary injunction. The chancellor denied Appellants' request.

¶ 7 Trial was held on December 18, 1997 following which the chancellor entered an adjudication and decree *nisi* denying Appellants' request for equitable and monetary relief. Appellants timely filed post-trial motions which the chancellor denied. Appellants timely appealed and present the following issues for review: (1) whether a restrictive covenant contained in the deed of a prior purchaser is binding upon a subsequent purchaser; (2) whether restrictive covenants applicable to a recorded plan are equally as binding as those contained in a prior deed in the subsequent purchaser's chain of title; and (3) whether the restrictive covenant contained in Appellants' deed was ambiguous.

The standard of review of an appellate court when reviewing the findings of a court in equity is well established. [N]ormally, appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. A final decree in equity will not be disturbed on appeal unless it is unsupported by the evidence or [is] demonstrably capricious. Further, the test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witnesses, but whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the chancellor. Facts found by the chancellor, when supported by competent evidence in the record, are binding. However, no such deference is mandated for conclusions of law, and we are at liberty to review such conclusions.

**3.** Prior to the reconfiguration, the Keith's lot was 19,961 square feet.

*Kepple v. Fairman Drilling Co.*, 532 Pa. 304, 312, 615 A.2d 1298, 1302 (1992) (citations and quotation marks omitted). *Accord Gey v. Beck*, 390 Pa.Super. 317, 568 A.2d 672, 675 (1990). We shall evaluate the findings of the chancellor and Appellants' arguments with these considerations in mind.

¶ 8 Because all of the issues raised by Appellants concern the chancellor's determinations regarding the restrictive covenants, these matters will be addressed simultaneously. As recognized by this Court, "[a]lthough restrictive covenants are not favored, they are legally enforceable. Such covenants are strictly construed against the party seeking enforcement of the covenant." *Gey v. Beck*, *supra.*

¶ 9 "Restrictive covenants must be construed in light of their language, their subject matter, the intent or purpose of the parties, and the conditions surrounding their execution. Where an ambiguity exists[,] we may consider extrinsic evidence of the parties' intent." *Perrige v. Horning*, 440 Pa.Super. 31, 654 A.2d 1183, 1188 (1995) (citations omitted). *Accord Estate of Hoffman v. Gould*, 714 A.2d 1071, 1073 (Pa.Super.1998); *Gey, supra.* All doubts and ambiguities in the language of the covenant are to be resolved in favor of the property owner. *Covey v. Gross*, 377 Pa.Super. 580, 547 A.2d 1214, 1215 (1988). Application of the above principles persuades us that the chancellor did not err in declining to enforce the restrictive covenant set forth in Appellants' deed.

¶ 10 The record reflects that the plan depicting the Barthelmes' and the Keiths' lots was recorded on April 20, 1989. Plaintiff's Exhibit B (South Franklin Farms Plan 6) (hereinafter Plan 6). No restrictive covenants were set forth in Plan 6. *Id.* Rather, the restrictive covenants imposed by Franklin Manor were all set forth in the purchasers' deeds.

¶ 11 With the exception of Appellants' deed, all of the deeds of the other purchasers contained a minimum lot size restriction of 17,500 square feet. *See* Plaintiffs' Exhibit C (Keith Deed, dated 11/20/95), Defendant's Exhibit 2 (Evans Deed, dated 8/24/89), Defendant's Exhibit 3 (Tyson Deed, dated 9/25/91), Defendant's Exhibit 4 (Duritza Deed, dated 12/16/91), Defendant's Exhibit 5 (Yoest Deed, dated 1992), Defendant's Exhibit 6 (Moore Deed, dated 8/11/92) and Appellant's Brief, Exhibit C (Harrison Deed, dated 8/28/86).[4] Moreover, the Harrison and Evans deeds were executed and recorded prior to the issuance of Appellants' deed. The remaining deeds were executed after Appellants' deed.

¶ 12 While the restrictive covenants contained in the parties' deeds are each clear and unambiguous on their face, it is evident that the covenant in Appellants' deed conflicts with that contained in the Keiths' deed. What Appellants seek to do is enforce the terms of their particular covenant on the Keiths. Appellants have not referred us to any statute or caselaw, nor has our own research uncovered any such authority, which provides that one restrictive covenant is to take precedence over a contrary restrictive covenant set forth in a different deed issued by a common grantor. Rather, this Court has observed that "[t]he fact that an owner imposes restrictions on portions of a tract does not raise an inference that he intends thereby to obligate himself to restrict similarly the remainder of his land. In every such instance there must appear definite evidence of a purpose to bind the remaining land." *Burns v. Baumgardner*, 303 Pa.Super. 85, 449 A.2d 590, 593 (1982).

4. The Harrison deed was admitted at the hearing and relied upon by the chancellor in rendering her adjudication. N.T. 12/18/97 at 8; Adjudication and Decree Nisi, filed 4/8/98, at 7. For reasons that are unclear, the Harrison Deed was omitted from the certified record submitted to this Court. We do not deem this defect fatal, however, because the contents of the deed are not in dispute and the chancellor explained the basis of her reliance on the deed in her adjudication.

We are also mindful of the fact that courts should not extend or enlarge, by implication, a restraint on the use of land. *Richman v. Mosites*, 704 A.2d 655, 658 (Pa.Super.1997). We must accordingly look to the other deeds and the testimony of the grantor in order to ascertain whether such definite evidence exists.

¶ 13 Mr. Beeghly testified that when he began developing the property, there was no ordinance governing lot size. N.T. 12/18/97 at 64–65. He nonetheless voluntarily agreed to impose a minimum lot size restriction of 17,500 square feet on properties within his subdivision. *Id.* Accordingly, all of the deeds issued contained this except for Appellants' deed. *See* Keith, Evans, Tyson, Duritza, Yoest, Moore and Harrison Deeds, *supra.* Beeghly indicated that a different restriction was placed in Appellants' deed because they purchased two lots and he wanted to ensure that they would not further subdivide their lots. N.T. 12/18/97 at 57. In addition, at the time Appellants' purchased their lot, the township-zoning officer had advised Mr. Beeghly that the township was considering the enactment of an ordinance that would set the minimum lot size at 21,780 square feet. *Id.* at 57–58 and 61.

¶ 14 The above evidence thus reflects that it was not the intent of the grantor to create a restrictive covenant setting forth a minimum lot size of 21,780 square feet. Rather, the grantor intended to set forth a minimum lot size of 17,500 square feet. It is also apparent that Appellants' property was subjected to an increased burden because they purchased two lots; others who purchased single lots were not subjected to the increased minimum lot size. Viewed in this manner, we find Appellants' claims to be without merit. Having determined that the chancellor's findings and conclusions are amply supported by the record, we affirm.

¶ 15 Decree affirmed.