J.S15043/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDYTHE H. BOSSERT TRUST, | : | IN THE SUPERIOR COURT OF |
| C/O TRUSTEES W. MAX BOSSERT, JR., | : | PENNSYLVANIA |
| THOMAS H. BOSSERT, AND SUSAN | : | |
| HANNEGAN, LIVING THRUSTEES, | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK O. MCGHEE, | : | |
| | : | No. 1124 MDA 2013 |
| Appellant | : | |

Appeal from the Decree June 3, 2013
In the Court of Common Pleas of Clinton County
Civil Division No(s).: 144-12

BEFORE: BOWES, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 30, 2014**

Appellant, Patrick O. McGhee, appeals from the decree entered in the Clinton County Court of Common Pleas in favor of Appellees, Edythe H. Bossert Trust, c/o Trustees W. Max Bossert, Jr., Thomas H. Bossert, and Susan Hannegan, Living Trustees, in this action to quiet title.[1] Appellant contends the court erred in finding the boundary line between the parties' properties is a standard wire fence, depicted in a 1917 railroad map, which is no longer standing. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the March 11, 2013 preliminary decree and the June 3, 2013 decree. The March 11th decree was not the final decree. **See** Pa.R.A.P. 341(a). Therefore, we have amended the caption.

The trial court summarized the procedural posture and facts of this case as follows:

> Before us is a quiet title action filed by [Appellees on February 8, 2012] with respect to a small parcel of land in Beech Creek Township which [Appellees] contend was acquired by them through a conveyance from the Fearon Estate in 1992. [Appellant] claims ownership of the same parcel through Deed from the Beech Creek Railroad Company and the Penn Central Corporation in 1978. [Appellant] filed an Amended Answer and Counterclaim seeking quiet title, ejectment, trespass, and a request for injunction. [Appellees] responded by filing an Amended New Matter and Counterclaim seeking attorney's fees, court costs, and surveyor's costs, in addition to their claim for damages for removal of soil contained in their original Complaint.

Prelim. Decree, 3/12/13, at 1.

Robert Ohl testified at trial as an expert for Appellant. N.T., 2/26/13, at 26. He testified on cross-examination, *inter alia*, as follows:

> [Counsel for Appellees]: Now, when you do surveying work, do you look for spikes and pipes and pins?
>
> A: Yes. I look for any monumentation that it calls for in the survey.
>
> Q: Did you look for old fence wire?
>
> A: Yes. There is, . . . , marking trees with barbed wire on what we found and also [a] **fence post on the property line between [Appellees'] and Day's** . . . .
>
> Q: That fence line that you found, that was strictly on the old fence wire between Day and [Appellees], correct?
>
> A: Day and [Appellees] and [Appellant].

*Id.* at 39-40 (emphasis added).

Kerry Uhler testified as an expert for Appellees regarding his survey of the property:

> [Counsel for Appellees]: And in this corner of [Appellees'] property, what kind of monuments and boundaries did you find in relationship to the survey?
>
> A: We found possession in the manner of occupation and use of a significant portion of the area for agricultural purposes. Beyond that, we found very little monumentation other than the standing stone . . .
>
> Q: What about trees and brush?
>
> A: There are significant trees, brush, and we'll say debris toward the northern portion of the disputed area.
>
>          \*     \*     \*
>
> Q: That 1896 deed describes woven wire and smooth wire; does it not?
>
> A: Yes, sir, it does.
>
> Q: Can you tell the Court the significance of that?
>
> A: The reference to woven wire is just the same as any other monumentation. Survey is an attempt to retrace the original surveyor's footsteps. **Any reference by a stream, an iron pin, a stone, fence, those are all monuments.** The original deed from . . . Annie Fearon, to the railroad[2] in 1896 referenced a fence which would be installed by and maintained by the railroad. We have found that fence was installed at the described location to the west of Maple Avenue, but it was not installed at the—to every piece of information we found, it was not installed at the described location to the east of Maple Avenue in the disputed area.
>
>          \*     \*     \*

---

[2] The railroad is the Beech Creek Railroad Company. *Id.* at 89.

. . . I found historic documentation showing that **there actually was a fence installed at the location that we are calling the property line, which is the same location Warren Ohl surveyed**.[3]

\* \* \*

Q: Tell the court when [Appellant's Exhibit K, a right-of-way and tract map of the Beech Creek Railroad] was prepared.

A: This document was prepared in June of 1917. . . .

Q: Of the entire length in the area in question and beyond?

A: Yes, sir.

Q: Can you show the Court where the disputed area is?

A: The disputed area—

The Court: Is marked with a number 5.

The Witness: Yes, sir. Right in the area marked number 5.

\* \* \*

[Counsel for Appellees]: What are we looking at there? What do you see there?

A: What I'm looking at there—well, I see the area in question is delineated by the railroad as according to historical documentations. When I look down very close to the south line of the original 66 foot right-of-way, I see it labels fence there. **It says STD for standard wire fence**. . . . So it appears to me **the railroad constructed their fence line in the current location of the property line** . . . .

*Id.* at 91-93, 94, 95-96 (emphases added).

---

[3] Warren Ohl, an engineer and surveyor, was Robert Ohl's uncle. *Id*. at 34.

There was an aerial photo taken in 1938 which showed "a very fine and clear line . . . which is indicative of what a maintained fence line looks like in an aerial photo." *Id.* at 99.

[Counsel for Appellees]: Now, is this aerial photograph, the 1938 aerial photograph, and where **the fence line appears to be in that photograph consistent with Warren Ohl's survey**?

A: **Yes**, it is.

Q: **Is it consistent with [Appellees'] boundary line**?

A: **Yes**, it is.

\*     \*     \*

Q: So that I'm clear, when you're doing surveying, do monuments like fence lines control over legal descriptions?

A: In the situation of a division of land where land is divided and described in a deed and the original division of that land on the ground as witnessed by monuments do not agree, those **monuments will prevail over the written documentation**.

Q: **Is a fence line a monument**?

A: **Yes**, it is.

Q: So based upon all of the things that you've done, the actual being present on site on more than one occasion, I believe—

A: Yes, sir.

Q: —reviewing everything that you've reviewed, including that 1896 deed and reviewing all of the photographs and all of the surveys, **what is your opinion within a reasonable degree of certainty as to who owns this disputed land**?

A: . . . It is my opinion that the title to that land never transferred to the railroad as the railroad monumented their line further north at that point. And, therefore, **that [disputed] land remains with [Appellees]**.

Q: Fearon and then [Appellees]?

A: Fearon and then [Appellees], yes, sir.

*Id.* at 100, 101 (emphases added).

The trial court found that Appellees were "the owners of all land lying south of the location of this standard wire fence. Because [they] have failed to establish their claim for adverse possession of land lying north of the standard wire fence, their claim of ownership fails." Prelim. Decree at 3-4. Accordingly, the court directed Uhler to "amend his survey to eliminate from [Appellees'] claim land lying to the North of the 'std. wire fence' line set forth on [Appellant's] Exhibit K-1 and submit his modified survey to the Court for the entry of a final Decree." *Id.* at 4.

On April 25, 2013, Uhler submitted a revised survey which the court found established the boundary line. Decree, 6/4/13, at 1. Appellant filed a motion for reconsideration. On June 4, 2013, the court denied the motion for reconsideration and entered a final decree establishing the boundary line and awarding Appellees damages. Appellant's motion for post-trial relief was denied. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court's Rule 1925(a) statement relied upon its prior decrees.

Appellant raises the following issues for our review:

> I. Did the court err in finding that the boundary line between the parties' properties should be in the location of a standard wire fence noted on a railroad map dated June 30, 1917, instead of in the location of the actual boundary line clearly shown on the same map and as described in the deeds in the chain of title of [Appellant]?
>
> II. Did the court err in awarding [Appellees] twelve hundred dollars ($1,200.00) when there was no testimony or evidence offered at trial to enable the factfinder to determine the amount or the value of the topsoil/fill removed from the property the court awarded [Appellees].

Appellant's Brief at 5.

First, Appellant argues the trial court erred in determining "that the proper location of the boundary line separating the parties' property should be in the location of where a standard wire fence was shown to be on a railroad map dated June 30, 1917 and revised December 31, 1955." *Id*. at 16. Appellant contends "[t]he fence was **not a monument on the ground to control over a metes and bounds description in the Deed**." *Id.* at 17 (emphasis added). He maintains, "The standard wire fence does not exist today nor was it ever in existence at any point where any of the parties saw evidence of a fence in that location." *Id.* Appellant avers that instead, the October 6, 1896 deed in his chain of title from Fearon to the Railroad shows the proper boundary line between the properties. *Id.* at 24. We find no relief is due.

"The question of where a boundary line actually is located is a question for the trier of fact. Where, as here, the trial court sat as the fact-finder, we will not reverse on appeal unless the court's findings are not supported by

credible evidence." ***Schimp v. Allaman***, 659 A.2d 1032, 1034 (Pa. Super. 1995) (citations omitted). "Further, the test is not whether we, the appellate court, would have reached the same result had we been acting as the hearing judge who saw and heard the witnesses, but whether a judicial mind, on due consideration of the evidence, as a whole, could reasonably have reached the conclusion of the chancellor." ***Barthelmes v. Keith***, 732 A.2d 644, 646 (Pa. Super. 1999) (citation omitted).

"The general rules to be applied in boundary cases were set forth in ***Walleigh v. Emery***, [ ] 163 A.2d 665, [667 (Pa. Super. 1960),] as follows: '**Courses and distances in a deed must give way to monuments on the ground**.' ***Merlino v. Eannotti***, [110 A.2d 783. 787 (Pa. Super. 1955)]." ***Baker v. Roslyn Swim Club***, 213 A.2d 145, 148 (Pa. Super. 1965) (emphasis added). "As a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the **monuments prevail**." ***Pencil v. Buchart***, 551 A.2d 302, 306 (Pa. Super. 1988) (emphasis added).

Instantly, the trial court reasoned:

> With respect to the respective cross-claims for adverse possession, we are not satisfied that either party has established adverse, hostile, notorious, and exclusive possession. While [Appellees'] Exhibit 2, aerial photos in the 1930's and 1970's, suggests tree lines enclosed the area in dispute on [Appellees'] side of the trees, the testimony establishes that, at least with respect to the northern portion of the area in dispute, that area was used for miscellaneous purposes by both parties. With respect to the southern portion of the area in dispute, it is clear

from the aerial photographs that much of that area has historically been farmed by [Appellees] and their predecessors.

With respect to [Appellees'] claim, we accept generally the survey of Alan Uhler ([Appellees'] Exhibit 1) which establishes the area in dispute as lying entirely within [Appellees'] parcel. On the other hand, **we cannot ignore the presence of a "standard wire fence" which was in existence in 1917. We find that fence to be the most significant factor in this dispute** as discussed hereafter and base our Decree on the location of that fence in conjunction with the Uhler survey.

After consideration of all of the exhibits presented to us, we believe the area in dispute is designated as Parcel 5 on the right-of-way and tract map of the Beech Creek Railroad dated June 30, 1917 ([Appellant's] Exhibit K). That map references Parcel 5 as . . . the premises conveyed to the Beech Creek Railroad Company by Annie W. Fearon, *et al.*, dated October 6, 1896, and recorded in Clinton County Deed Book 43, Page 847. That Deed begins at the dividing line between Fearon and William McAlmont on the southern boundary line of the right-of-way of the railroad thirty-three (33) feet at right angles from the center line. The parties seem to be in agreement that the parcel currently owned by Michael Day is the McAlmont parcel. The sixty-six (66) foot right-of-way in question we believe to be the area contained in a land release obtained in the 1880's. In previous litigation between Day and [Appellant], we determined [Appellant and Debra McGhee, his wife] have no fee simple interest in the land release parcel, only a prescriptive easement, a decision which was affirmed by the Superior Court.[4]

From the beginning point of the 1896 Deed, the call is a "curved line to the right with a radius of 3,853 feet (148 feet) to a point in the westerly line of the public road leading from Lock Haven to Beech Creek" and thereafter 23 feet along said public road. The documents submitted

---

[4] **Day v. McGhee**, 878 MDA 2008 (unpublished memorandum) (Pa. Super. Feb. 2, 2009).

> by [Appellant], prepared by H. Richard Ohl, Registered Surveyor, dated January 3, 1978, and Robert Ohl, Registered Surveyor, dated November 17, 2011, do not reflect a "curved line" nor do they designate the location of the 23 feet. The 1896 Deed then travels in a westerly direction along the railroad right-of-way to land of Joseph Merry, then in a southerly direction $38^1/_2$ feet, thence back in an easterly direction to another "curved line to the left with a radius of 3,903 feet (228 feet) to the lands of McAlmont." The final call is North 37 degrees 50 minutes West 55 feet to the point of beginning. This call could conceivably be the 56.6 feet set forth in the Richard Ohl and Robert Ohl surveys if one ignores the two separate calls for a "curved line."
>
> What is interesting about [Appellant's] Exhibit K-1, [an enlarged] portion of [Appellant's] Exhibit K, is that the placement of a "**std. wire fence" extending from the roadway to the McAlmont line and beyond is clearly designated**. . . .

Prelim. Decree, 3/12/13, at 1-3 (emphases added).

Instantly, the trial court found the boundary between the parties' properties was established by Appellees' expert Uhler's survey. Decree, 6/4/13. The trial court agreed with Uhler that the standard wire fence was a monument and it prevailed in the instant land dispute. Prelim. Decree at 2. The court concluded the "fence [was] the most significant factor in this dispute . . . and based [its] Decree on the location of that fence in conjunction with the Uhler survey." *Id.* We agree. *See Pencil*, 551 A.2d at 306; *Baker*, 213 A.2d at 148.

Appellant asks this Court to find his expert witnesses more credible. The trial court was the finder of fact and concluded Appellees' expert was

- 10 -

more credible.  We find the court's conclusion was reasonable.  ***See Barthelmes***, 732 A.2d at 646; ***Schimp***, 659 A.2d at 1034.

Lastly, Appellant contends there was insufficient evidence to enable the court to determine that Appellees should be awarded $1,200 for the material he removed from the disputed area.  Appellant's Brief at 25.

As a prefatory matter, we consider whether Appellant has waived this issue.  The "failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review."  ***Harris v. Toys "R" Us-Penn, Inc.***, 880 A.2d 1270, 1279 (Pa. Super. 2005).  Instantly, Appellant fails to cite any legal authority in support of this issue; therefore, it is waived.  ***See id.***

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014